UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRADLEY CADDELL, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:14-CV-02249 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
|     Defendants. | § | |

**DEFENDANTS' SUPPLEMENT TO MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **NOW COME** Defendants Texas Department of Criminal Justice, Brad Livingston, William Stephens, Robert Eason, Lannette Linthicum; and Phyllis McWhorter[1] by and through the Office of the Attorney General of Texas, and file this Defendants' Supplement to Motion to Dismiss for Failure to Exhaust Administrative Remedies. In support thereof, Defendants incorporate by this reference the Motion to Dismiss for Failure to Exhaust filed at Doc. No. 8 and would respectfully show as follows:

    In support of this motion, Defendants attach:

**Supplement A to Exhibit 1:** TDCJ Mainframe, Date Plaintiff was Transferred to Michael Unit

**Supplement B to Exhibit 1:** TDCJ Mainframe, Date Plaintiff was Assigned to the Boiler Room

**Supplement C to Exhibit 1:** TDCJ Mainframe, Date Plaintiff was Released from TDCJ-CID

**Exhibit 2:** Letter From Jeff Edwards, Counsel for Plaintiff, Dated July 18, 2014

---

[1] Counsel for Defendants have not received proof of service or requests for representation from named defendants, Rick Thaler, Jeff Pringle, Balden Polk, or Louis Williams.

## STATEMENT OF THE CASE

Plaintiff, Bradley Caddell ("Caddell"), sustained an alleged injury on June 30, 2012 while incarcerated at the Hutchins Unit. (Doc. No. 1, p. 23, para. 108) One year, six months and eight days after Caddell was released from custody he filed this lawsuit. (Doc. No. 1, filed on June 20, 2014) Defendants filed a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act 42 U.S.C. 1997e. (Doc. No. 8) Plaintiff's counsel sent a letter to Defendants dated July 18, 2014 requesting Defendants withdraw said motion, arguing that the PLRA does not apply to Caddell and stated that any argument to the contrary is legally frivolous and not warranted by existing law under FED. R. CIV. P. 11. (Ex. 2) Defendants, therefore, file this Supplement to Defendants' Motion for Failure to Exhaust to explain why they are not in violation of Rule 11 and also why this case should be dismissed due to Caddell's failure to exhaust as required by the PLRA.

## STATEMENT OF FACTS

Caddell is a former prisoner who had been incarcerated at the Hutchins State Jail. (Doc. No. 1, p. 2, para. 5; Supplement A to Ex. 1) TDCJ assigned Caddell on September 12, 2011 to work in the boiler room. (Doc. No. 1, p. 21, para. 95; Supplement B to Ex. 1) On June 30, 2012, Caddell suffered a heat stroke and received medical treatment. (Doc. No. 1, p. 23, para. 104-108) On July 12, 2012, TDCJ transferred Caddell out of Hutchins to the Michael Unit. (Doc. No. 1, p. 24, para. 112-113; Ex. 1) TDCJ released Caddell from incarceration on December 12, 2012, five months and 12 days after Caddell's alleged heat-stroke. (Supplement C to Ex. 1) Caddell filed this lawsuit on June 20, 2014, one year, six months and eight days after his release, just under two years from his alleged injury in June 2012, and more than three years after his 2011 assignment to work in the boiler room. (Doc. No. 1; Supplement B to Ex. 1) A review of

Caddell's grievances dated March 2011 through December 2012 shows he did know how to file grievances. Caddell, nevertheless, chose not to file any grievances regarding his 2011 assignment to work in the boiler room, his June 2012 heat stroke incident, or his transfer from Hutchins to Michael in 2012.[2]

**ARGUMENT AND AUTHORITIES**

**I.   Defendants' Motion to Dismiss for Failure to Exhaust is not Legally Frivolous Under Rule 11.**

Plaintiff's counsel assert that Defendants' motion to dismiss for failure to exhaust administrative remedies is legally frivolous and not "warranted by existing law." (Ex. 2) The claims, defenses, and other legal contentions need to be warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing a new law. FED. R. CIV. P. 11(b)(2) (2014). The standard for reviewing whether a defense is "warranted by existing law" is whether the signatories of the motion fulfilled their duty of reasonable inquiry into the relevant law and includes the plausibility of the legal theory espoused and the complexity of the issues raised. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993). Even if an argument is erroneous, it does not violate Rule 11 unless it is "unreasonable from the point of view both of existing law and of its possible extension, modification, or reversal." *Id*. Sanctions should not be imposed for advocating a plausible legal theory when the law is arguably unclear. *Id*. at 794. Here, the law is arguably unclear and Defendants are arguing for possible extension, modification, or reversal. This Court, therefore, should not impose Rule 11 sanctions because Defendants advance plausible legal and factual theories supporting their motion to dismiss based upon Caddell's failure to exhaust during the

---

[2] Because Caddell's grievances contain other medical issues not in any way related to the facts and issues in this case, Defendants have not attached the grievances to this Supplement. Should this Court wish to review said grievances Defendants will submit them under seal.

time he remained incarcerated after the incidents about which he complains.

## II. The PLRA is Intended to Give Prisons and Individual Defendants Working at the Prison Notice of a Prisoner's Complaints At or Near the Time an Incident Occurred.

Congress enacted the PLRA in an effort to address the large number of prisoner complaints filed in federal court and reduce the amount of frivolous claims brought by inmates. *See* 42 U.S.C. § 1997e *et seq*. The PLRA seeks to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e (West, Westlaw 2013).

The Supreme Court has expressly found the PLRA leaves "no question that exhaustion is mandatory . . . and that unexhausted claims cannot be brought into court." *Jones v. Bock*, 549 U.S. 199, 203 (2007)(citing *Porter*, 534 U.S. at 524). Exhaustion "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Prior to *Jones*, the Fifth Circuit emphasized this concern in *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004), where the court held that prison administrators must have "a fair opportunity under the circumstances to address the problem that will later form the basis of suit."

Exhaustion requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The Supreme Court held that the determination of "proper exhaustion" is made by

asking whether the prisoner has complied with the prison grievance process itself—this will vary from state to state. *Jones*, 549 U.S. at 218.

The PLRA requires strict compliance with State administrative remedies before a prisoner can bring suit in Federal court. Recently, the Fifth Circuit held that "the PLRA pre-filing exhaustion requirement is mandatory and nondiscretionary," *Beasley v. Ivy*, 6:12CV450, 2013 WL 5819233 at 4 (E.D. Tex. Oct. 29, 2013)(quoting *Gonzalez v. Seal,* 702 F.3d 785, 787 (5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice,* 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez* ), and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement," *Gonzalez,* 702 F.3d at 788.

Texas prisons have a two-step grievance process. *Johnson*, 385 F.3d at 515. A prisoner must file a Step 1 grievance within fifteen days of the incident being grieved so it may be evaluated at the particular prison facility. *Id.* Upon receiving an adverse Step 1 grievance response from prison administrators, the prisoner may then appeal that response—via a Step 2 grievance—but must do so within ten days of receiving the Step 1 response; which, again, will be evaluated at the state level. *Id.* This procedure ensures that prison administrators—both at the prison and state level—will have a fair opportunity to address prisoner concerns prior to litigating them. The Fifth Circuit requires a prisoner to strictly adhere to TDCJ grievance procedures before a claim may be deemed properly exhausted. *See Johnson*, 385 F.3d at 515 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."); *see also*, *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.") (emphasis added).

Caddell alleged injury occurred on June 30, 2012, an event which would have triggered the grievance process if he wished to pursue a lawsuit. For five months and twelve days, Caddell did nothing to facilitate corrective administrative action---he filed no grievance at the time. Defendants received absolutely no notice of Caddell's complaint and could not investigate the allegations nor institute possible corrective action, an unjust result under 42 U.S.C. § 1997e(a).

**III. The Law Cited by Plaintiff's Counsel is not Dispositive.**

*A. Janes v. Hernandez Concerns Attorneys' Fees, Not Exhaustion.*

Plaintiff's counsel contend the PLRA *exhaustion* requirement does not apply in this case because Caddell has sued as a *former* inmate. Defendants contend, however, that if a former inmate brings a lawsuit after incarceration for an event he had time to grieve while still incarcerated---but, chose not to grieve---the prisoner should not be allowed file suit after release, even if the statute of limitations has not run. Defendants argue that the rule should be that, if there is time to pursue the grievance process before release, prisoners be required under 42 U.S.C. §1997e(a) to file the grievance. And, if they do not, they may not bring suit after release.

*B. The Authority Cited by Plaintiff's Counsel is not Binding Authority*

Caddell asserts that *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000), is controlling on this issue. But, a closer look at the case makes this assertion unclear because *Janes* concerned attorneys' fees under §1997e(d) and not exhaustion of administrative remedies. *Id*. Attorneys' fees and exhaustion of administrative remedies are different aspects of the PLRA because the grievance provides notice to individual defendants at or near the time of an incident as opposed to the amount of legal fees an attorney may be awarded in a post-incarceration lawsuit. The *Janes* case, therefore, should not be applied as a black letter rule that prisoners can completely skip the grievance process---thereby, avoiding the important notice requirements of the PLRA---

just because they were released before the statute of limitations has run on their case. A rule like this defeats the purpose of the PLRA to allow individual defendants and the prison system the opportunity to investigate potential problems at or near the time the issues arose.

Plaintiff's counsel also cite *Shanklin* as binding authority on this issue. The case, however, is a District Court *Interim Report and Recommendation* and does not cite to Fifth Circuit law, other than *Janes*, on whether former prisoners can skip the grievance process while in prison, then wait until they are released from prison to file suit before the statute of limitations runs. *Shanklin v. Chamblin*, 2912 WL 2376271, at 4 (W.D. Tex. June 22, 2012)(Austin, Mag. J.)(collecting cases in support of his ruling). The court in *Shanklin*, relies on *Janes* and cases from other circuit courts for the proposition that former prisoners, who bring lawsuits under 42 U.S.C. §1983 after being released from prison, are not subject to the PLRA exhaustion requirement. *Id*. The case, therefore, while possibly constituting persuasive authority, should not stand as binding authority on defendants in this scenario. This specific issue has not been authoritatively ruled on by the Fifth Circuit.

**IV.     Other Jurisdictions Have Determined that Former Prisoners Are Still Subject to the PLRA's Exhaustion Requirement.**

   A. *The Court's Analysis in Zehner Contains the Proper Analysis for Former Prisoners regarding the Applicability of the Rule of Exhaustion pursuant to 42 U.S.C. §1997e(a).*

The issue of whether §1997e(a) applies to former prisoners who file suit after being released was directly addressed in *Morgan v. Maricopa County*, 259 F. Supp. 2d 985, 991-92 (D. Ariz. 2003). The court stated that the prisoner's claim arose while he was incarcerated and was directly related to his incarceration. *Id*. The court went on to further state:

> "Interpreting the PLRA as inapplicable to former prisoner's claims which arose during the prisoner's incarceration if a prisoner waits to file suit, like Morgan did, until a month after his release from

> custody and over ten month's after the cause of action arose would nullify Congress' intent in passing the PLRA. The absurdity of such an interpretation is reason enough to reject it." *Id*. at 992.

Here, Caddell's cause of action accrued five months and twelve days before his release. The TDCJ grievance process requires Caddell to submit his grievance within 15 days of the incident. Five months, therefore, provided Caddell ample time to exhaust and notify the individual defendants of his complaint. A review of Caddell's grievance records show he knew how to file grievances and did so during his incarceration. Yet, he inexplicably failed to do so for the incidents about which he sues. TDCJ transferred Caddell after the injury and, again, if Caddell had a grievance related to the transfer, he had sufficient opportunity months before his release to pursue TDCJ's prisoner grievance process. (Ex. 1)

The court, in *Mason v. San Mateo County*, agrees with Defendants' position. This court similarly held that former prisoners are subject to the exhaustion requirements of the PLRA. *Mason v. San Mateo County*, 2005 WL 3957924, * 3 (N.D. Cal. 2005); *accord Morgan*, 259 F. Supp. 2d at 992. The court explained that §1997e(a) was "intended to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,' and 'for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.'" *Id*. at 2. The court stated that exempting ex-prisoners from the exhaustion requirement would defeat Congress' objectives in enacting the PLRA. *Id*. at 3. If the court accepts Caddell's argument, that the PLRA's exhaustion requirement is not applicable because of his status as a "former" prisoner, the Congressional objectives in enacting the PLRA will be nullified completely for these types of cases.

In another case, *Zehner v. Trigg*, 952 F. Supp. 1318, 1327 (N.D. Ind. 1997), the court

provides persuasive reasoning regarding why the Defendants' position should be adopted. In *Zehner*, the court held that 42 U.S.C. §1997e(e) (emotional and mental injury damages section) applies to suits by prisoners arising while the prisoner is in custody, regardless of whether the prisoner is released prior to commencing a civil action. *Id.* While *Zehner* addressed the application of §1997e(e) of the PLRA, the court's statutory construction analysis is, nevertheless, very informative of how to analyze the applicability of § 1997e(a), exhaustion. In *Zehner*, the district court found that if courts allow a prisoner to wait until release to file a case without pursuing the exhaustion process before release (assuming they have time before release to exhaust) would be a "perverse result not intended by Congress in legislation intended to relieve the courts and other litigants of the burdensome consequences of litigation that is often, but by no means always, frivolous." *Id*. Such a result, the court determined, created an arbitrary distinction between prisoners based solely on their release date. *Id*. The court explained this result would create two different classes of prisoners, with the exact same injury by the same official: those who expect to be released before the statute of limitations runs and those who do not. *Id*. Courts must try to avoid results that would be "absurd or thwart the obvious purpose of the statute." *Id*. (citing *Lynch v. Overholser*, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, L.Ed.2d 211 (1962) (warning "against the dangers of an approach to statutory construction which confines itself to bare words of a statute")).

While, this analysis was applied to §1997e(e) relating to damages, it is informative of §1997e(a), exhaustion. If this Court were to adopt Caddell's construction, the same problem would be created: absurd results for the same or similar claims. An absurd result was not contemplated by Congress when enacting the PLRA. *See Kerr v. Puckett*, 967 F. Supp. 354, 362 (E.D. Wis. 1997); *accord Zehner*, 952 F. Supp. At 1323-27. Not applying 1997e(a) to former

prisoners who have time to exhaust before release would thwart the purpose of the PLRA. By not requiring exhaustion in this case, where he had more than five months available to pursue the grievance process, Caddell would be allowed to improperly thwart the purpose of the PLRA's exhaustion requirement which deprives individual defendants of notice and the opportunity to have an investigation at or near the time of the incidents. As such, the Plaintff's rule would lead to an unjust, possibly even an absurd, result.

Caddell had five months and twelve days to avail himself of the grievance process while he was still incarcerated. Caddell never once filed a grievance with regard to the issues he now sues about a year six months and eight days after his release. TDCJ transferred Caddell to another unit and, if Caddell still had cause for a grievance with regard to TDCJ's assignment of him to work in the boiler room, the heat stroke injury or the transfer, his transfer did not prevent him from filing a grievance. Caddell, instead, hid his complaints from the Defendants and TDCJ by waiting until after being released to make his complaints in a law suit. It is an incorrect reading of the PLRA to say Congress intended to allow prisoners to subvert the PLRA, when they fail to utilize the required administrative remedies when they have time to exhaust during their incarceration. *Beasley*, 6:12CV450, 2013 WL 5819233 at 4 ("the PLRA pre-filing exhaustion requirement is mandatory and nondiscretionary") *Moussazadeh*, 703 F.3d at 788 ("district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement").

## CONCLUSION

The PLRA's exhaustion requirement, under § 1997e(a), should be applicable to suits filed by former prisoners when they have sufficient time to pursue the grievance process before release. Establishment of this rule comports with Congressional intent to require exhaustion in all suits brought by prisoners for alleged injuries arising while incarcerated. Defendants' arguments

concerning the Prison Litigation Reform Act's exhaustion requirement are not legally frivolous and are warranted by existing law. This Court, therefore, should dismiss Caddell's suit because he failed to avail himself of the TDCJ prisoner grievance process within 15 days of the dates of his alleged injuries.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ *Daniel Neuhoff*
**DANIEL NEUHOFF**
Assistant Attorney General
Texas Bar No. 24088123
Daniel.neuhoff@texasattorneygeneral.gov

**CYNTHIA L. BURTON**
Assistant Attorney General
Attorney in charge
Texas Bar No. 24035455
Cynthia.burton@texasattorneygeneral.gov

**BRUCE R. GARCIA**
Assistant Attorney General
Texas Bar No. 07631060
Bruce.garcia@texasattorneygeneral.gov

Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin TX  78711
(512) 463-2080/Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS'**

**NOTICE OF ELECTRONIC FILING**

I, **DANIEL NEUHOFF**, Assistant Attorney General of Texas, certify that I have electronically submitted for a copy of the foregoing for filing in accordance with the Electronic Case Files system of the Northern District of Texas on July 24, 2014.

>/s/ *Daniel Neuhoff*
>**DANIEL NEUHOFF**
>Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **DANIEL NEUHOFF**, Assistant Attorney General of Texas, certify that I have served all counsel or *pro se* parties of record electronically or by another manner authorized by FED. R. CIV. P. 5 (b)(2) on July 24, 2014.

>/s/ *Daniel Neuhoff*
>**DANIEL NEUHOFF**
>Assistant Attorney General