UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRADLEY CADDELL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-CV-3323 |
| | § | |
| BRAD LIVINGSTON, et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendants' Motions to Dismiss for Failure to Exhaust Administrative Remedies (Doc. Nos. 8, 12, and 16).[1] Also pending is Plaintiff Bradley Caddell's request for attorney's fees as a sanction (Doc. No. 17). After reviewing the motions and responses, the parties' arguments, and the applicable law, the Court finds that Mr. Caddell was not required to exhaust remedies under the Prison Litigation Reform Act ("PLRA") because he was not incarcerated or detained when he brought this suit. Therefore, the Court **DENIES** Defendants' Motions to Dismiss. The Court also **DENIES** Mr. Caddell's Motion for Sanctions.

I.  BACKGROUND

Mr. Caddell was incarcerated at the Hutchins State Jail during the summer of 2012. Mr. Caddell alleges that, while in custody, he suffered a heat stroke because he was forced to live and work in extreme temperatures. A year and a half after his release, Mr. Caddell filed this suit.

Defendants contend that Mr. Caddell's suit must be dismissed because he failed to exhaust the available administrative remedies before filing, as required by the PLRA. Mr.

---

[1] All docket references are to Civil Action No. 4:14-CV-3323.

Caddell counters that the PLRA applies only to prisoners and therefore, as a former inmate, he is not subject to its mandatory exhaustion requirement.

## II. PRISON LITIGATION REFORM ACT

The PLRA states that:

> "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). A prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Where the PLRA is applicable, exhaustion is mandatory. *Jones v. Bock*, 549 U.S. 199, 211 (2007).

## III. ANALYSIS

Mr. Caddell contends that the PLRA's exhaustion provision applies only to suits filed by individuals who are in custody at the time of filing. Since his suit was filed after his release from incarceration, Mr. Caddell argues that he was not obligated to first exhaust any available administrative remedies.

The plain language of the PLRA clearly supports Mr. Caddell's position. The exhaustion requirement applies only to actions brought by individuals who are incarcerated or detained. Embedded within this provision are two components. First, it is an individual's status *at the time of filing* that dictates whether the exhaustion requirement applies. *See Norton v. The City of Marietta, OK*, 432 F.3d 1145, 1150 (10th Cir. 2005) ("[T]he other circuits to have addressed the issue have unanimously held that it is the plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion provision applies."); *Harris v. Garner*, 216 F.3d 970, 973-7

(11th Cir. 2000) (en banc) (explaining that the term "brought" in the PLRA and other federal statutes uniformly refers to the filing of a lawsuit, not its continuation). Second, only those individuals who are *in custody* at the time of filing are required to exhaust available administrative remedies. It is undisputed that Mr. Caddell was neither incarcerated nor detained when this suit was filed. Thus, he was not bound by the exhaustion requirement.

Every circuit court to consider this issue has held that the PLRA's exhaustion provision does not apply to individuals who had already been released at the time of filing. *See Lesene v. Doe*, 712 F.3d 584 (D.C. Cir. 2013); *Talamantes v. Leyva*, 575 F.3d 1021 (9th Cir. 2009); *Cofield v. Bowser*, 247 F. App'x. 412 (4th Cir. 2007); *Norton*, 432 F.3d 1145 (10th Cir. 2005); *Nerness v. Johnson*, 401 F.3d 874 (8th Cir. 2005); *Ahmed v. Dragovich*, 297 F.3d 201 (3rd Cir. 2002); *Greig v. Goord*, 169 F.3d 165 (2nd Cir. 1999). Further, although the Fifth Circuit has yet to rule on the applicability of the exhaustion provision in particular, it has held that that the PLRA's attorney's fees cap does not apply to individuals who were not incarcerated at the time of filing. *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) ("We agree with the Eighth and Seventh Circuits which have held that this Act applies to only those suits filed by prisoners."). Like the exhaustion provision, the attorney's fees cap pertains to any action brought by "a prisoner who is confined to any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(d). A single definition of "prisoner" applies to both the attorney's fees provision and the exhaustion requirement. Accordingly, both provisions bind only currently incarcerated or detained individuals.

Defendants ask this Court to ignore the PLRA's language and fifteen years of consistent jurisprudence and hold that the PLRA is also applicable to suits filed by former prisoners. Defendants seek to differentiate Mr. Caddell's suit from those considered by other courts by noting that he knew how to submit an administrative grievance, had five months in custody

during which to submit that grievance, and waited a year and a half after his release to file this action. They further argue that a ruling in Mr. Caddell's favor would eviscerate the policy of the PLRA and deprive prison administrators of the opportunity to address prisoner grievances internally. Defendants also contend that the prevailing interpretation of the PLRA's exhaustion requirement creates an arbitrary distinction between prisoners based solely upon their release dates. They believe such a distinction is an absurd result and could not have been Congress' intention in enacting the PLRA.

Defendants' arguments are unpersuasive primarily because they directly contravene the plain language of the statute. Much ink has been spilled on the importance of adhering to the cardinal canon of statutory interpretation: "a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are unambiguous, this first canon is also the last: the judicial inquiry is complete." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-4 (1992). The Court need not rehash this mandate here. It suffices to say that a judge's job "is to construe the statute—not to make it better." *Jones*, 549 U.S. at 217. Thus, irrespective of the merits of Defendants' policy argument, it is not within this Court's purview to add to or subtract from the clear requirements of the statute.

Further, the Court does not find that a straightforward application of the statutory language leads to an absurd result. Prior to enacting the PLRA, Congress was concerned with the number of frivolous cases filed by prisoners, and the intent behind the legislation was to reduce this number. *Harris*, 216 F.3d at 977. Limiting the PLRA's purview to current prisoners furthers this goal. The opportunity costs of litigation are far greater for individuals who have been released from custody than for individuals who remain incarcerated. *Id.* (internal citation omitted); *see also Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004) (noting that prisoners

encounter uniquely low opportunity costs relative to the typical litigant). These additional costs obviate the need to enact special procedural hurdles to litigation brought by formerly incarcerated individuals. Thus, this Court joins others in finding that a distinction between current and former prisoners comports with the objectives of the PLRA. *E.g., id.*; *Norton*, 432 F.3d at 1150-51; *Harris*, 216 F.3d at 977-8; *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1988).

Finally, Defendants' attempt to distinguish Mr. Caddell's suit on its facts is unavailing. The PLRA lacks any suggestion that its applicability is contingent upon an inmate's time in custody or his knowledge of grievance procedures.[2] So long as a suit is filed within the relevant statute of limitations, the length of time between an individual's release and the filing of his suit is similarly immaterial. Defendants' arguments have found no traction in other courts. For example, the Tenth Circuit held that the PLRA is applicable only to individuals who were in custody at the time of filing, despite the fact that the plaintiff was in custody for six months and filed suit nearly a year after being released. *Norton*, 432 F.3d 1145. The D.C. Circuit reached the same decision in *Lesene v. Doe*, even though the defendants argued that the plaintiff was aware of the available grievance procedures. 712 F.3d 584.

This Court is also puzzled by Defendants' contention that the Ninth Circuit's ruling in *Talamantes v. Leyva* is inapposite because the plaintiff's father contacted a jail administrator to complain about the conditions of his son's confinement. 575 F.3d 1021. It is evident from *Talamantes* that the complaint of the plaintiff's father did not adhere to the grievance procedures in place at the time, and that his complaint was irrelevant to the court's decision that former

---

[2] Defendants repeatedly stress that Mr. Caddell had five months and twelve days to avail himself of the grievance process while incarcerated. This assertion is misleading. In order to properly pursue a grievance, a Texas state prisoner must file a complaint within fifteen days of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Regardless of how long Mr. Caddell remained in custody thereafter, he had only this brief window in which to lodge his complaint.

inmates need not exhaust remedies prior to filing their actions. What is unclear is what lesson Defendants intend the Court to draw from this case. The Court has little doubt that, even if a member of Mr. Caddell's family had lodged a complaint on his behalf, Defendants would still maintain that he was subject to the PLRA's exhaustion requirement. Defendants' argument ignores the sole fact about Mr. Caddell's case that is relevant to this analysis—his confinement status at the time of filing. Since he was not in custody at the time of filing, he was not subject to the exhaustion requirement.

## IV. RULE 11 SANCTIONS

Mr. Caddell urges the Court to levy attorney's fees against Defendants as a sanction for filing frivolous motions. *See* Fed. R. Civ. P. 11(c). Although Defendants' motions are clearly against the weight of the case law, Defendants correctly note that the Fifth Circuit has not explicitly held that the PLRA's exhaustion provision applies only to individuals in custody at the time of filing. Because Defendants' Motions to Dismiss are not wholly foreclosed by binding precedent, the Court declines to impose a sanction.

## V. CONCLUSION

Because Mr. Caddell was not incarcerated or detained when he filed this suit, he was not bound by the PLRA's exhaustion requirement. Accordingly, Defendants' Motions to Dismiss must be **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 17th day of March, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE