## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **BRADLEY CADDELL,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 4:14-cv-03323** |
| | § | |
| **BRAD LIVINGSTON,** *et al.*, | § | |
| **Defendants.** | § | |

## DEFENDANTS LIVINGSTON, STEPHENS, THALER, AND LINTHICUM'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Brad Livingston, William Stephens, Rick Thaler, and Lannette Linthicum, by and through their attorneys, the Office of the Attorney General of Texas, move for judgment on the pleadings under Fed. R. Civ. P. 12(c).  In support thereof, Defendants respectfully attach the following[1]:

**Exhibit A:**   **Texas Department of Criminal Justice Administrative Directive 10.64**

**Exhibit B:**   **Correctional Managed Health Care Policy Manual B-15.2 "Heat Stress"**

**Exhibit C:**   **TDCJ Mainframe messages distributed in 2011 and 2012 regarding heat mitigation measures**

### I.     STATEMENT OF THE CASE

Plaintiff Caddell was an inmate confined to the custody of the Texas Department of Criminal Justice (TDCJ) at the Hutchins Unit near Dallas, Texas and then the Michael Unit in Tennessee Colony, Texas. (See Docket Entry "D.E." 1 at 2) Plaintiff filed suit against Defendants

---

[1] As stated below, Defendants contend this Court may consider these exhibits under Rule 12 as they are referred to in the pleadings and are central to Plaintiff's claims as they pertain to qualified immunity.  In the alternative, Defendants move this Court to take judicial notice of these documents.  (*See* briefing *supra*, Part II, Evidentiary Matters.)

Livingston, Thaler, Stephens, and Linthicum under 42 U.S.C. §1983, claiming they were deliberately indifferent to a serious risk to his health and safety due to conditions at the Hutchins Unit, which he claims violated his Eighth Amendment rights.  Plaintiff alleges that his assignment to work in the boiler room and his housing assignment in "dangerously hot dormitories" were violations of his civil rights. (See D.E. 1 at 26-27)

The incident in this case occurred at the Hutchins Unit on June 30, 2012. (See D.E. 1 at 22) Plaintiff walked to the infirmary complaining of overheating and blurred vision. (See D.E. 1 at 23) Medical staff at the infirmary began treating plaintiff until approximately 6:45pm when the decision was made to transport him at Parkland Hospital. (See D.E. 1 at 23, 24)  Plaintiff was treated with intravenous fluids and returned to the unit at approximately 12:30am the morning of July 1, 2012. (*Id.*) He later was transferred to the TDCJ Michael Unit where, he claims he experienced heat related symptoms, though he does not allege any specific episode for which he sought or received medical care. (See D.E. 1 at 24, 26)  He further claims to have suffered "intense mental anguish" due to his apprehension over the heat. (See D.E. 1 at 26)

Defendants Livingston, Thaler, Stephens and Linthicum are executive employees of the Texas Department of Criminal Justice.  Defendant Livingston is the Executive Director of TDCJ, and oversees the entire agency.  Defendant Thaler was, at the time relevant to this suit, the Director of the Correctional Institutions Division, which oversees operations in all TDCJ prison facilities. Defendants Stephens was the Deputy Director of this same division.  Plaintiff claims that each of these Defendants were either the "commanding officer" or "direct supervisor" of all "correctional officers, guards and TDCJ employees," and were responsible for their "training supervision and conduct." (See D.E. 1 at 2-3)  Defendant Linthicum is a medical doctor, and the director of TDCJ's Health Services Division. (See D.E. 1 at 4)  Plaintiff (incorrectly) claims the Health Services

Division supervises all TDCJ medical providers and is responsible for all policies governing the medical care prisoners receive. (D.E. 1 at 4)  In reality, the Health Services division is but one part of statutorily created, three member committee that creates such policies.  See TEX. GOV'T CODE § 501.148.  The committee includes TDCJ, the University of Texas Medical Branch, and the Texas Tech Health Sciences Center.

Plaintiff does not claim that Defendants Livingston, Thaler, Stephens, or Linthicum had any personal knowledge of his specific circumstances prior to his injury in 2012. (See generally, D.E. 1)  Plaintiffs do not plead, for example, that Livingston, Thaler, Stephens, or Linthicum knew that Caddell was incarcerated. (*Id.*) Plaintiff does not allege that they knew his age, physical or psychological conditions, what medications he had been prescribed, his housing or job assignment or any of the other facts that Plaintiff contends are relevant to making a determination as to whether he required cooler housing, a different job assignment, or any other accommodation. (*Id.*)  Rather, their liability stems from their alleged supervisory authority in establishing TDCJ policies, and their general knowledge of the risks associated with the heat in TDCJ facilities, and their knowledge that TDCJ does not provide mechanical cooling in many of its housing areas. (D.E. 1 at 14-16)  Plaintiff claims that the executive defendants generally knew inmates with conditions similar to Plaintiff were in the TDCJ system, and that these specific conditions (obesity and hypertension) increases a person's susceptibility to heat related illness. (D.E. 1 at 10, 14-16)  Plaintiff also claims that the executive defendants were aware that in years prior and in 2011, TDCJ inmates had died due to heat related illness. (*Id.*)

Plaintiff admits that TDCJ has enacted policies regarding the heat as it pertains to work conditions and acknowledges that TDCJ has employed additional measures to mitigate the heat in the housing areas. (D.E. 1 at 15 at ¶58, 16 at ¶64, 17 at ¶65, 17 at ¶67. *See also* Ex. A, B)  The

"measures" Plaintiff references in his complaint  at D.E. 1 at 15 at ¶58, 17 at ¶67 are contained in an annual email created and circulated throughout TDCJ. (See Ex. C)  The measures were devised in consultation with staff from various TDCJ divisions/departments including, offender transportation, health services, risk management, laundry, food service, supply, and plans and operations. (*Id.*) TDCJ ordered these measures under the authority of Defendant Thaler. (See *Id.*) These measures included (but are not limited to): 1) ensuring officers and inmates are trained on heat related issues; 2) providing additional water and ice to offenders in housing areas; 3) protections regarding the transfer of inmates, including the time of transfer, procedures during transfers, and protective measures to identify offenders who are heat sensitive; 4) allowances for additional showers; 5) lessened clothing requirements in dayroom areas; 6) instructions on the use of fans, blowers, and/or windows to ventilate housing areas; and 7) the provision of personal fans to inmates either through purchase or for free for indigent offenders. (*Id.*)  In addition, Plaintiff admits that during 2012, TDCJ implemented an white armband identification system for offenders having a medical condition that placed them at some level of increased risk for heat related illness so that these offenders could be more closely monitored by staff to ensure their well-being. (D.E. 1 at 22 ¶¶ 96-98)  Plaintiff claims that the executive Defendants know these measures are inadequate and that they are inadequately implemented. (D.E. 1 at 15 at ¶58, 17 at ¶67) This claim is made in a conclusory fashion and the complaint provides no factual allegations in support of it.

Defendants Livingston, Thaler, Stephens and Linthicum have all answered and asserted their entitlement to qualified immunity. (See  D.E. 45)  These executive defendants now move for judgment as matter of law under Fed. R. Civ. P. 12(c).

## II.    STATEMENT OF ISSUES

1.    Whether Defendants Livingston, Thaler, Stephens and Linthicum are entitled to judgment

on the pleadings based on their entitlement to qualified immunity.

## III.    SUMMARY OF THE ARGUMENT

Defendants Livingston, Thaler, Stephens and Linthicum are not sued due to their personal

involvement or knowledge of any facts particular to Plaintiff Caddell.  Rather, they are sued under

the theory that the policies they have implemented violated Plaintiff Caddell's constitutional rights

by subjecting him to high temperatures.  These executive defendants are entitled to judgment as a

matter of law because the policies in question and the heat mitigation measures they ordered to be

implemented throughout TDCJ were modelled after clearly established Fifth Circuit law regarding

the mitigation of heat in a prison setting.  Moreover, their actions and policies were objectively

reasonable.  Because the pleadings fail to allege facts that negate their entitlement to qualified

immunity, they are entitled to judgment as a matter of law under Fed. R. Civ. P. 12(c).

## IV.    EVIDENTIARY MATTERS

**A.    This Court may consider documents referenced in Plaintiff's complaint that are central to Plaintiffs' claim to overcome qualified immunity.**

Consideration of a motion to dismiss for failure to state a claim or a motion for judgment

on the pleadings is generally limited to the contents of the pleadings and attachments to the

pleadings. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed.

R. Civ. P. 12(b)(6)). According to Federal Rule of Civil Procedure 12(d), "If, on a motion under

Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the

court, the motion must be treated as one for summary judgment under Rule 56." However, the 5th

Circuit has set out on exception to the rule.  Documents a defendant attaches to a 12(b)(6) or 12(c)

will be considered part of the pleadings if they are referred to in the plaintiff's complaint and they are a central part of the plaintiff's claim. *Collins*, 224 F.3d at 498-499; *Coal. for an Airline Passenger's B. of Rights v. Delta Air Lines, Inc.*, 693 F.Supp.2d 667, 675-676 (S.D. Tex. 2010). In order for documents attached to a motion to dismiss to be considered a part of the pleading and therefore come within the exception the documents must: 1) be attached to the defendant's motion to dismiss, 2) be referred to in the plaintiff's complaint and 3) be central to the plaintiff's claim. *Kaye v. Lone Star Fund V (U.S.), LP.*, 435 B.R. 645, 662 (N.D. Tex. 2011). An attached document is considered central to the plaintiff's claim when it is necessary to an element of one of the plaintiff's claims. *Id.*

Here, Plaintiff's claims against Defendants Livingston, Thaler, Stephens and Linthicum are predicated on their supervisory authority over policies and deficiencies in the mitigation measures that Plaintiff admits are in place. In that regard, the policies and practices in question are, within the meaning of Rule 12, matters that are central to the elements necessary to establish supervisory liability.[2] Further, these policies are necessary to meet the Plaintiff's burden to overcome qualified immunity. As such, the written policies at issue, as well as the written instructions from the TDCJ executive defendants ordering the implementation of mitigation measures are central to Plaintiff's claims within the meaning of *Collins*. Defendants contend that

---

[2] As supervisory officials, Livingston, Thaler, Stephens and Linthicum may be liable under § 1983 only if (1) they affirmatively participate in the acts that cause the constitutional deprivation, or (2) they implement unconstitutional policies that causally result in the constitutional injury. *Valentine v. Jones*, 2014 WL 1689202 (5th Cir. 2014), *citing Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). The second path to liability for supervisory officials is commonly understood to impose liability "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of [a] constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987) (citations omitted).

the Court may appropriately consider the attached documents without converting this motion to a Rule 56 motion.

**B.     In the alternative, Defendants Livingston, Thaler, Stephens, and Linthicum move this Court to take judicial notice of the attached documents.**

In the alternative, Defendants move the Court to take judicial notice of the existence of these documents and actions and policies set forth in them.  In deciding a 12(b)(6) motion courts must generally limit their inquiry to facts stated in the complaint, contained in the documents attached to the complaint, or otherwise incorporated into the complaint. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 -1018 (5th Cir. 1996). However, courts may also consider specific facts of which they take judicial notice. *Lovelace*, 78 F. 3d at 1017-1018 (citing F. R. Evid. 201). Under Rule 201(b)(2) of the Federal Rules of Evidence, a court has the discretion to take judicial notice of  "adjudicative facts" that are not subject to reasonable dispute because such facts "are generally known within the trial courts territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." F. R. Evid. 201(b)(1)-(2). Judicial notice may be taken at any time during litigation. F. R. Evid. 201(f).

The policies and the e-mail attached as exhibits to this motion are indisputably adjudicative facts where they have been used, reused, cited and re-cited in countless pleadings and as exhibits to numerous depositions by all of the parties in other similar suits filed across Texas and that are now pending in this Court and at the Fifth Circuit.[3]

---

[3]  *McCollum*, 4:14-cv-3253 (Defendants contend this case is stayed pending ruling on executive defendants' qualified immunity or ruling by 5th Circuit on the other pending appeals); *Hinojosa*, Cause No. 4:14-cv-03311 (stayed pending appeal at 5th Circuit, No. 14-40459, argued Feb. 3, 2015); *Webb*, Cause No. 4:14-cv-03302 (stayed on appeal, 5th Cir. Case no. 14-40579. It is the lead case in the consolidated appeal set for oral argument on April 28, 2015 with *Togonidze*, Cause No. 4:14-cv-03324, 5th Cir. Case No. 14-40586 and *Adams*, Cause No. 4:14-cv-03326, 5th Cir.

All parties have relied numerous times on the accuracy of the policies and the e-mail provided in discovery.  The accuracy of these materials simply "cannot be questioned."  Because Livingston, Stephens, Thaler, and Linthicum have filed copies of publicly-available materials that have been in near-constant use throughout the other pending cases (*see* fn. 3) and which are relevant to central claims made in this case as well as the issue of their qualified immunity, the Court should exercise its discretion to take judicial notice of these documents for purposes of this motion.

## V.    BRIEF IN SUPPORT

### A.    Pleading Standards under Rule 12.

The standard for deciding a Rule 12(c) motion for judgment on the pleadings is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). In examining a motion for judgment on the pleadings, therefore, the court must accept as true all well pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (May 18, 2009), pleading standards have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

---

No. 14-40756); *Bailey*, 4:14-cv-1698 (discovery open, scheduling order pending); and *Martone*, Cause No. 4:13-cv-03369 (discovery in progress, however, no scheduling order has been entered.)

The Supreme Court began its rejection of bare bones pleading in *Twombly,* holding that a pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949.  Courts should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.

Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." 129 S. Ct. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. Conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See *Id.* at 1949-50; see also *Twombly*, 550 U.S. at 555, & n.3.

**B.      Defendants Livingston, Thaler, Stephens, and Linthicum are entitled to qualified immunity.**

Defendants Livingston, Thaler, Stephens, and Linthicum are entitled to qualified immunity because they acted in accordance with clearly established Fifth Circuit law and their actions were objectively reasonable.  As they are sued in their individual capacities, Defendants are protected by the doctrine of qualified immunity.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1983).  "The doctrine of qualified immunity shields public officials like the respondents from damages actions unless their conduct was unreasonable in light of clearly established law." *Elder v. Holloway* 510 U.S. 510 (1994).  In order to overcome this defense, Plaintiffs must prove Defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. "[O]fficials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir.2001). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

It is Plaintiff's burden to overcome Defendants' right to qualified immunity.  *Salas v. Carpenter,* 980 F.2d 299 (5th Cir.1992); *Elliott v. Perez*, 751 F.2d 1472, 1476-79 (5th Cir.1985). Plaintiff is held to heightened pleading standards and must allege, with particularity, all material facts establishing his right to recovery, including facts which negate the official's qualified immunity defense. *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986); *Elliott v. Perez*, 751 F.2d 1472, 1478-79, 1482 (5th Cir.1985).

"[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.* at 201. "Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The Supreme Court has held that the sequence of the steps is not mandatory. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

The Supreme Court recently and forcefully re-admonished Courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, ––– U.S. ––––, 131 S.Ct. 2074, 2084 (2011). To do so would eviscerate the qualified immunity defense. *Id.* The inquiry "must be undertaken in light of the specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right ... in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. 635, 640 (1987).

In two recent cases, the Fifth Circuit reaffirmed and re-emphasized that "this requirement establishes a high bar." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir.2013); *See also Morgan v. Swanson*, 659 F.3d 359, 378–79 (5th Cir.2011) (en banc). When deciding whether the right allegedly violated was "clearly established," the court asks "whether the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law." *Wyatt*, 718 F.3d at 503 (5th Cir.2013) (emphasis contained in original) (*citing Morgan*, 659 F.3d at 371); *See also*, *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997). Answering in the affirmative requires the court to be able to point to "controlling

authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* When there is no controlling authority *specifically prohibiting* a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity. *Id.* at 372. Courts must not waver from holding to these "clearly drawn bright lines as rigorous background principles of qualified immunity." *Id.*; *Morgan*, 659 F.3d at 371.

**C.**    **Defendants fairly relied upon Fifth Circuit precedent regarding the implementation of Court-approved heat mitigation measures and regarding the design of the facilities themselves, and the law was not clearly established to the contrary.**

Because Plaintiff does not claim any direct knowledge or participation in the housing, job assignment or care for Plaintiff, his legal theory of liability for the executive defendants rests on their position of authority as alleged policy makers. The Supreme Court recently held that in a civil rights lawsuit "each Government official, his or her title notwithstanding is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1943 (2009). Supervisory liability exists even without overt personal participation in the offensive act only if supervisory officials 1) implement a policy so deficient that the policy itself is a repudiation of constitutional rights and 2) the policy is the moving force of [a] constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987) (citations omitted). In order to be liable on such a theory of deliberate indifference, the supervisory officials must have had actual or constructive knowledge of the deficient policy at issue and overt participation in it. *Blank v. Eavenson*, 530 Fed.Appx. 364, 370-71 (5th Cir.2013); *Cf. Thompkins*, 828 F.2d at 304. Demonstrating that a policy reflects deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir.2004) (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003)) (internal quotation marks omitted).

The executive defendants contend that the policies they implemented do not rise to this level, and Plaintiff has failed to establish a constitutional violation. More importantly, however, the policies implemented are in accordance with clearly established Fifth Circuit law, and are objectively reasonable, and the executive defendants are therefore entitled to qualified immunity.

**1.     TDCJ Executive Defendants ordered heat mitigation measures which have been approved by the Fifth Circuit.**

In June of 2012, the legal landscape with regard to heat as a potential Eighth Amendment violations was limited and somewhat sparse. In the Fifth Circuit, two primary cases comprise the legal landscape in regard to excessive heat as an Eighth Amendment violation in June of 2012. In *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir.2004) the Fifth Circuit established measures that when implemented by prison officials would cure any potential Eighth Amendment violations due to high heat. The Court was considering an appeal from a grant of injunctive relief regarding the conditions of confinement in a particular section of a death row housing facility in Mississippi in the middle of the Mississippi River delta. *Id.* The Plaintiffs claimed that conditions in their housing area were unbearably hot and posed a health risk. *Id.* at 334. There was no outside ventilation fans in the housing area, but the inmates could open windows in their cells, though this caused problems with mosquitos because the screens were too large. *Id.* They were not provided with ice water, and only allowed one shower per week. *Id.* Some had fans in their cells. *Id.* The court ordered three remedial measures: 1) that a fan be provided for each cell; 2) ice water be provided to the offenders; and 3) the offenders be permitted to shower once per day. *Id.* at 336  The Court also ordered that screens with a smaller gauge be supplied for each window so it could be opened for ventilation without letting in mosquitos. *Id.* The Fifth Circuit upheld these measures finding that the District Court's finding of an Eighth Amendment violation was not clearly erroneous, and that these corrective measures were reasonable to cure it. *Id.* at 339-40.

*Valigura v. Mendoza*, 265 Fed.Appx. 232 (5th Cir. 2008) represents the only other instance where the Fifth Circuit addressed heat issues as potential Eighth Amendment violations prior to Plaintiff's injury. *Valigura* presented a dramatically different context than at issue in *Gates* or here. In *Valigura*, the Plaintiff claimed during lockdown periods he was confined to his bunk for 24 hours a day for stretches as long as 10 to 15 days at a time. *Id.* at 235. *See also*, *Valigura v. Mendoza*, 2006 WL 4072061, 3 (S.D.Tex.) (S.D.Tex.,2006)  He claimed he was only allowed to get up to use the restroom or shower if another offender was not already using it. *Id.* at 334.  He claimed this meant he was forced to go significant periods of time when he was not able to shower. *Id.*  He also claimed he was not permitted to get up and get water during these times. *Id.* at 235. In addition the plaintiff claimed that his housing area had *no* ventilation. *Valigura*, 2006 WL 4072061 at *3.   In regard to the qualified immunity analysis, the Court specifically cited to the *Gates* holding for the proposition that the law was clearly established that the alleged living conditions were unconstitutional.  In sum, the Court was presented with a situation where there was (allegedly) little to no access to showers, no access to water, no fans and no ventilation.[4] As is **<u>abundantly clear</u>** in the Court's analysis, it was not simply the temperatures that created the viable cause of action, it was the alleged lack of remedial measures in light of surrounding temperature that elevated the claim to a cognizable Eighth Amendment violation. Combined, these cases establish a **<u>very clear</u>** legal rule: unmitigated heat can be unconstitutional, but heat mitigated with water, showers, fans, and ventilation, is not.

---

[4] It should be noted that the Court's ruling was based on the plaintiff's allegations. In the ensuing trial, the plaintiff's claims regarding the conditions and restrictions in the housing area were proven to be largely fabricated and the jury entered a verdict for the defendants.

Recent argument in the Fifth Circuit in a heat related case concerning Louisiana's Angola Prison confirms that even today, the law is not clearly established that prison officials must provide measures beyond the *Gates* measures. *Elzie Ball, et al v. James LeBlanc, et al*, Appeal No. 14-30067 (5th Cir. 2014).  During oral argument and in the briefing, both the parties and the Court discussed the *Gates* measures and whether they provide a viable constitutional minima that prison officials must provide to mitigate the heat. *Id.*  That the Fifth Circuit is still weighing this issue today affirmatively establishes that the law is not clearly established that prison officials must provide measures beyond those set out in *Gates*.

The heat mitigation measures ordered by the TDCJ executives mirror those that the Court established in *Gates* and even included additional measures beyond those the Fifth Circuit sanctioned.  This is so particularly in terms of ice water and showers.  In certain facilities, such as the Hutchins unit, where the precise measures approved in *Gates* are unavailable due to the facilities, equivalent measures are implemented.  For example, though there are no outlets available for personal fans for each bunk, multiple large industrial fans ran are installed to blow on the offenders in the open dorm area.  Similarly, while there were no operable windows in the dorm as there were in *Gates*, there is an industrial air handler which provided ventilation to the area served this same purpose.  At the time of Plaintiff's alleged injury, no court in the Fifth Circuit held that providing slightly different, though equivalent mitigation measures than those articulated in *Gates* would be constitutionally insufficient.

Plaintiff will no doubt argue that the Fifth Circuit's holding in *Blackmon v. Garza*, 484 F. App'x 866, 869 (5th Cir.2012), establishes that the *Gates* alone were not sufficient to mitigate heat for certain offenders.  First, *Blackmon* was decided *after* to the alleged injury in this case, and several months after the TDCJ executives, through Thaler, ordered the mitigation measures in

place during the summer of 2012.  It should also be noted that the *Blackmon* court stopped short of suggesting what Plaintiff claims here, and in fact squarely contradicts one Plaintiff's major assertions. *Compare Blackmon*, 484 F. App'x at 872 n.6 ("We also note that, like the *Gates* court, we do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment."); *with* D.E. 1 at ¶ 48 ("In reality, no mitigation measures short of climate control or a policy to relocate inmates to cooler housing areas can adequately protect people from these extreme temperatures. Without climate controlled housing, prisoners will inevitably suffer heat related illnesses and injuries, and be placed at increased risk of death.").  In a very real way, the Fifth Circuit has already rejected one Plaintiff's primary allegations against the executive defendants, further solidifying their position that law was not clearly established that their mitigation measures are *per se* insufficient.

Finally, and perhaps most importantly, the District Court in *Blackmon* addressed - and dismissed – allegations nearly identical to those asserted here against Defendant Livingston.[5] After setting out the law regarding supervisory liability, the Court dismissed this claim. *Blackmon v. Kukua*, 758 F.Supp.2d 398, 411 (S.D.Tex.,2010).  The Fifth Circuit did not disturb this ruling. *Blackmon*, 484 F. App'x 866.

To the extent Plaintiff asserted that there are issues of fact regarding whether these measures were being implemented either at all or insufficiently, Plaintiff has not pled that Livingston, Thaler, Stephens, or Linthicum were made aware of this fact prior to Plaintiff's alleged injury.  As has already been documented in Defendants' Motion to Dismiss for Failure to Exhaust,

---

[5] Though presented far more succinctly, Blackmon claimed that Livingston is the commanding officer in TDCJ, that there were high temperatures in the dorm area where he lived, that these temperatures posed a "life-threatening health risk" and finally, "Defendant Livingston is aware of the heat problem and does nothing about it, acting with deliberate indifference to Plaintiff's rights." (See Docket Entry 120, *Blackmon v. Kukua et al.*, Cause No. 2:08-cv-00273 (S.D. Tex.2010 )

this Plaintiff did not bring to the attention of prison officials by grievance that the measures were not being implemented. (See D.E. 8)   To the extent that Plaintiff believes more or greater mitigation measures were required, the law in 2012 did not clearly establish this in any way, and certainly not to the specificity required under *Wyatt* and *Morgan* to overcome qualified immunity. As such, Plaintiff has not overcome the executive Defendants' entitlement to qualified immunity.

## 2.   The Hutchins Unit and its ventilation facilities were built and implemented under Federal Court supervision.

As this Court is well aware, numerous aspects of the design and operation of Texas prisons have been scrutinized and overseen by Federal Courts during the 1980's and 1990's, pursuant to the order of Judge Justice in *Ruiz v. Estelle, et al.*, 503 F.Supp. 1265 (S.D. Tex.1980).   Among these, matters of temperature and ventilation were stipulated between the parties in a consent decree and approved by the Courts.   These measures did not call for the air conditioning of TDCJ facilities.   In addition, during proceedings in 1998, the Court heard testimony on the particular topic of heat related illness, and in particular, expert testimony that included the expert's belief that three inmates had died in 1998 due to heat related causes, and 16 had been injured. *Ruiz v. Johnson*, 37 F.Supp.2d 855, 904-05 (S.D. Tex.1999).   Despite this, the Court declined to find the measures TDCJ had previously implemented were unconstitutional. *Id.* at 907.   Ultimately, TDCJ was discharged from further Federal judicial oversight, and did so without disturbing the provisions related to ventilation, despite testimony in the District Court regarding heat related issues. *Ruiz v. Johnson*, 154 F. Supp. 2d 975, 996 (S.D. Tex. 2001) Notably, the TDCJ Hutchins Unit was built and came online in 1995, during the time when TDCJ continued to be under Federal Judicial oversight.   Air conditioning was not a novel nor rarely utilized building feature at the time. Nevertheless, TDCJ was not required to install it in its facilities.   In this regard, it can be further argued that Plaintiff's allegation regarding the TDCJ executives do not rise to violations of clearly

establish law with regard to the design of TDCJ's prison buildings and ventilation systems ---- on the contrary, the building design and ventilation systems were overseen by the Court and approved.

**D.    The Executive Defendants' alleged actions were objectively reasonable.**

Even when taking Plaintiff's claims as true regarding the executive defendants, their conduct was not objectively unreasonable.  Fifth Circuit has held, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." See *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir.1997) (emphasis in original) (internal quotation and citation omitted).  If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir.2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Plaintiff claims that the TDCJ executive defendants are liable because they allegedly oversee policy decisions.  In this role, Plaintiff claims they knew the Hutchins Unit was dangerous due to the lack of air conditioning, and knew that offenders had died from heat in years past, including several in 2011.  This claim alone is insufficient to establish that their conduct was not objectively reasonable.  The summer of 2011 was an extremely abnormal weather event of record proportions.[6]  Also of public record is that as of August 31, 2012, TDCJ had 111 units and an inmate population of 152,303.[7] "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial

---

[6] *See* National Oceanic and Atmospheric Administration "*U.S. experiences second warmest summer on record: Texas has warmest summer on record of any state*" September 8, 2011. http://www.noaanews.noaa.gov/stories2011/20110908_auguststats.html

[7] Texas Department of Criminal Justice, *Fiscal Year 2012 Statistical Report*, http://www.tdcj.state.tx.us/documents/Statistical_Report_FY2012.pdf; Texas Department of Criminal Justice, Unit Directory, http://www.tdcj.state.tx.us/unit_directory/index.html.

notice of matters of public record."[8] According to Plaintiff's allegations, aside from the record summer of 2011---a time period for which he does not sue, only eight individuals are alleged to have died from heat-related causes between 1998 and the time of Plaintiff's alleged injury in 2012, and TDCJ had not had any heat related deaths in the years 2005, 2006, 2008, 2009 or 2010.  Even under Plaintiff's facts pled in the complaint, it cannot be said that every like situated prison official would have known prior to the summer of 2012 that measures outlined in TDCJ's emailed directive were constitutionally inadequate.  A reasonable prison administrator could have concluded that the deaths that occurred in 2011 did not occur because TDCJ mitigation measures were inadequate, but because the summer of 2011 was an extreme weather event, which could not be anticipated. Indeed those same measures proved successful in the three years prior to 2011.

Federal Courts' approval of TDCJ facilities without air conditioning, combined with the remedial measures ordered by the TDCJ executives that mirror court approved mitigation measures, demonstrates that TDCJ officials could have reasonably believed that their actions were within constitutional boundaries.  As such, even as pled, Defendants Livingston, Thaler, Stephens, and Linthicum's conduct cannot be seen as objectively unreasonable

## VI.    CONCLUSION

Defendants Livingston, Thaler, Stephens and Linthicum request that this Court grant their motion and dismiss all claims against them based on their entitlement to qualified immunity.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**CHARLES E. ROY**

---

[8] *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir.2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994).  Also see Fed. R. Evid. 201.

First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

**CYNTHIA L. BURTON**
Assistant Attorney General
Attorney in charge
Texas Bar No. 24035455
Southern District ID no. 35273
Cynthia.burton@texasattorneygeneral.gov

**BRUCE R. GARCIA**
Assistant Attorney General
Co-counsel
Texas Bar No. 07631060
Southern District ID no. 18934
Bruce.garcia@texasattorneygeneral.gov

*/s/ Matthew J. Greer*
**MATTHEW J. GREER**
**Assistant Attorney General**
**Co-Counsel**
**Texas Bar No. 24069825**
Southern District ID no. 1171775
Matthew.greer@texasattorneygeneral.gov

**DANIEL C. NEUHOFF**
Assistant Attorney General
Co-counsel
Texas Bar No. 24088123
Southern ID no.2374885
Daniel.neuhoff@texasattorneygeneral.gov

Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin TX  78711
(512) 463-2080/Fax (512) 936-2109

**ATTORNEYS FOR DEFENDANTS**
**WILLIAM STEPHENS, BRAD LIVINGSTON,**
**RICK THALER, AND, LANNETTE**
**LINTHICUM.**

## NOTICE OF ELECTRONIC FILING

I, **Matthew J. Greer**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing **Defendants Livingston, Stephens, Thaler, and Linthicum's Motion for Judgment on the Pleadings** in accordance with the Electronic Case Files system of the Southern District of Texas on this day April 24, 2015.

*/s/ Matthew J. Greer*
**MATTHEW J. GREER**
**Assistant Attorney General**

## CERTIFICATE OF SERVICE

I, **Matthew J. Greer**, Assistant Attorney General of Texas, certify that a true and correct copy of the above and foregoing **Defendants Livingston, Stephens, Thaler, and Linthicum's Motion for Judgment on the Pleadings** has been served electronically to all counsel or *pro se* parties of record as authorized by FED. R. CIV. P. 5 (b)(2) on April 24, 2015.

*/s/ Matthew J. Greer*
**MATTHEW J. GREER**
**Assistant Attorney General**